FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 15, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TIMOTHY C., | No. 2:17-cv-00434-MKD |
| Plaintiff, | |
| | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY |
| vs. | JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR |
| COMMISSIONER OF SOCIAL SECURITY, | SUMMARY JUDGMENT |
| Defendant. | ECF Nos. 15, 16 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion, ECF No. 15, and grants Defendant's Motion, ECF No. 16.

ORDER - 1

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner

ORDER - 3

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(b), 416.920(b).

　　　　If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

§§ 404.1520(c), 416.920(c).

　　　　At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the

claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

"A finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (citing *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001)). When there is medical evidence of drug or alcohol addiction (DAA), the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). In order to determine whether drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§

404.1535(b)(2), 416.935(b)(2).  If the remaining limitations would not be disabling, drug or alcohol addiction is a contributing factor material to the determination of disability.  *Id.*  If the remaining limitations would be disabling, the claimant is disabled independent of the drug or alcohol addiction and the addiction is not a contributing factor material to disability.  *Id.*  Plaintiff has the burden of showing that drug and alcohol addiction is not a contributing factor material to disability.  *Parra*, 481 F.3d at 748.

## ALJ'S FINDINGS

On February 25, 2014, Plaintiff filed applications for Title II disability insurance benefits and Title XVI supplemental security income, Tr. 189-97, alleging an amended onset date of December 31, 2008, Tr. 44-45.  The applications were denied initially, Tr. 129-36, and on reconsideration, Tr. 139-42.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on June 2, 2016.  Tr. 40-66.  On August 1, 2016, the ALJ denied Plaintiff's claims.  Tr. 17-39.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 31, 2008, the amended alleged onset date.  Tr. 23.  At step two, the ALJ found Plaintiff had the following severe impairments: depressive disorder, anxiety disorder, and polysubstance dependence (alcohol, marijuana, and methamphetamine by history).  *Id.*  At step three, the ALJ found Plaintiff's impairments, including the substance use disorders, medically equal sections

12.09, 12.04 and 12.06 of 20 C.F.R. Par 404, Subpart P, Appendix 1.  Tr. 27.

However, the ALJ found that if Plaintiff stopped the substance use, he would have

the following severe impairments: depressive disorder and anxiety disorder.  Tr.

28.  The ALJ further found that if Plaintiff stopped the substance use, he would not

have an impairment or combination of impairments that meets or medically equals

any of the listed impairments.  *Id.*  The ALJ then concluded that if Plaintiff stopped

the substance use, Plaintiff would have the RFC to perform a full range of work at

all exertional levels, but with the following nonexertional limitations:

> [Plaintiff] is able to understand, remember, and carry out simple, routine, and repetitive tasks and instructions and is able to maintain attention and concentration for 2-hour intervals between regularly scheduled breaks.  He would require a very predictable environment with no more than seldom changes in the work setting/work routine.  He is capable of only brief and superficial (defined as non-collaborative) contact with the public, dealing with things rather than people.  Neither math nor reading should be an essential function of the job.

Tr. 29.

At step four, the ALJ found that if Plaintiff stopped the substance use,

Plaintiff would be able to perform past relevant work as a laborer, shoes.  Tr. 33.

The ALJ concluded that because substance use disorder is a contributing factor

material to the determination of disability, Plaintiff was not under a disability, as

defined in the Social Security Act, from December 31, 2008, the amended alleged

onset date, through August 1, 2016, the date of the ALJ's decision.  Tr. 34.

ORDER - 8

On October 25, 2017, the Appeals Council denied review of the ALJ's

decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for

purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 404.981,

422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

him disability income benefits under Title II and supplemental security income

benefits under Title XVI of the Social Security Act. Plaintiff raises the following

issues for review:

1.  Whether the ALJ properly weighed Plaintiff's symptom testimony;

2.  Whether the ALJ properly weighed the medical opinion evidence;

3.  Whether the ALJ properly evaluated the severe impairments at step two;

4.  Whether the ALJ properly evaluated the listings at step three; and

5.  Whether the ALJ conducted a proper step four and five analysis.

ECF No. 15 at 5.

## DISCUSSION

### A. Plaintiff's Symptom Complaints

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting his subjective symptom claims. ECF No. 15 at 16-19.

An ALJ engages in a two-step analysis to determine whether to discount a

claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3) (2011). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's assertion of total disability was not supported by the weight of the evidence. Tr. 30.

### 1. Inconsistent Statements Regarding Drug and Alcohol Use

The ALJ discounted Plaintiff's symptom claims because he made inconsistent statements regarding his drug and alcohol use. Tr. 30. Conflicting and inconsistent statements about substance use are appropriate grounds for the

ALJ to discount a claimant's reported symptoms. *Thomas*, 278 F.3d at 959; *Edlund*, 253 F.3d at 1157; *Gray v. Comm'r, of Soc. Sec.*, 365 F. App'x 60, 63 (9th Cir. 2010); *Lewis v. Astrue*, 238 F. App'x 300, 302 (9th Cir. 2007); *Morton v. Astrue*, 232 F. App'x 718, 719 (9th Cir. 2007). Here, the ALJ cited numerous instances where Plaintiff gave inconsistent information to providers regarding his substance use and at various times denied a history of drug use. Tr. 30; *see* Tr. 283, 286 (May 2007: denied any prior use of drugs, including marijuana); Tr. 285-86 (May 2008: reported first use of marijuana at age 17 (approximately 1990) and daily use from approximately 2003 to 2008); Tr. 329 (Jan. 2013: started using methamphetamine at age 18 (approximately 1991) for approximately 12 years; started smoking marijuana at age 12 (approximately 1985), daily use from age 13 (approximately 1986) to at least 2010); Tr. 291 (June 2012: reported smoking marijuana weekly); Tr. 341 (Sept. 2014: reported cannabis use – one bowl a day).

Specifically, at a July 2015 evaluation, Plaintiff reported he had never used cannabis or illegal drugs, which is inconsistent with his significant prior history of marijuana and methamphetamine use. Tr. 349. At an evaluation on April 29, 2014, Plaintiff reported that he had quit drinking three months ago and had not relapsed and reported no history of or current use of illicit drugs. Tr. 337. In fact, a chart note from April 4, 2014 indicates he had started drinking heavily because his wife had left him. Tr. 334-36. As another example, at an evaluation in January

ORDER - 12

2013, Plaintiff told Dr. Garrett that he had stopped smoking marijuana three years

prior, which was inconsistent with the fact that he told his counselor in June 2012

that he was using marijuana weekly. *Compare* Tr. 329 *with* Tr. 291.

Plaintiff contends that the inconsistent statements are explained by

Plaintiff's poor memory, that Plaintiff was generally forthcoming about his

substance abuse, and that Plaintiff corrected his testimony regarding drug and

alcohol abuse at the hearing. ECF No. 15 at 17 (citing Tr. 53-54); ECF No. 17 at

7. Where the "evidence is susceptible to more than one rational interpretation, the

ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194,

1198 (9th Cir. 2008) (internal quotation marks omitted). On this record, the ALJ

reasonably concluded that Plaintiff inconsistently reported his substance use. This

finding is supported by substantial evidence and was a clear and convincing reason

to discount Plaintiff's symptoms complaints.

   2. *Objective Medical Evidence*

The ALJ found that Plaintiff's symptom complaints were not supported by

the objective medical evidence. Tr. 30. An ALJ may not discredit a claimant's

symptom testimony and deny benefits solely because the degree of the symptoms

alleged is not supported by objective medical evidence. *Burch v. Barnhart*, 400

F.3d 676, 680 (9th Cir. 2005); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*,

885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant

factor in determining the severity of a claimant's symptoms and their disabling

effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)

(2011). Here, the ALJ found that the only medical opinions that support Plaintiff's

symptom complaints were based on erroneous information he provided to the

evaluator regarding his substance abuse. Tr. 30. As one example, the ALJ noted

that Dr. Arnold assessed numerous severe limitations, concluded that the

limitations were not the result of substance abuse, and opined the limitations would

persist even after a period of sobriety. Tr. 349-52. However, as discussed *supra*,

Plaintiff denied any prior illicit drug use or marijuana use to Dr. Arnold, despite

his significant history of drug use. Tr. 349. Moreover, where Dr. Arnold's report

was rendered in July 2015, Plaintiff reported drinking heavily as recently as April

2014, Tr. 334-36, and as of at least September 2014 reported using a bowl of

cannabis daily, Tr. 341.

Plaintiff contends that the ALJ overlooked and mischaracterized

considerable evidence demonstrating Plaintiff had disabling impairments,

particularly in cognition, depressive symptoms and social interaction, in the

absence of substance use. ECF No. 15 at 17-18. However, Plaintiff fails to

identify any evidence where a provider or evaluator, who was fully apprised of

Plaintiff's history of substance abuse and current use of substances, opined that

ORDER - 14

Plaintiff would have disabling impairments absent substance abuse. *See Shinseki*, 556 U.S. at 409-10 (the party challenging the ALJ's decision bears the burden of showing harm). The ALJ reasonably considered the medical evidence and concluded it did not support the severity of Plaintiff's symptom complaints. This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptoms complaints.

### 3. Minimal Treatment

The ALJ found Plaintiff's symptom allegations were inconsistent with the minimal treatment he sought. Tr. 30. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F. App'x 45, 49 (9th Cir. 2009) (considering why plaintiff was not seeking treatment). Here, the ALJ noted that the relative infrequency of the treatment sought by Plaintiff was not consistent with his allegations of chronic and debilitating mental symptoms, particularly in view of his ready access to medical care through public health insurance. Tr. 30. The ALJ noted that although Plaintiff alleges disability

beginning December 31, 2008, there were no medical treatment records between April 18, 2008 and September 2009, no treatment records between April 2010 and January 2012, and no treatment records after December 2012 other than three months of treatment in April to August 2014 and two visits for low-back pain in March and April 2015. Tr. 30. Specifically, between 2013 and 2015, there are only five records: three medication management appointments, Tr. 341, 344, 346, and two visits for low back pain, Tr. 367, 369.

Plaintiff contends that he was unable to obtain psychiatric treatment due to insurance and financial issues. ECF No. 15 at 18 (citing Tr. 51, 323, 349, 372). Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Here, there is evidence in the record that Plaintiff was unable to see a psychiatrist and his medications had to be addressed by his primary care physician due to his insurance limitations. *See, e.g.*, Tr. 323. There is no evidence in the record that he faced any similar limitations in seeking other medical care, such as seeing his primary care physician or in seeking counseling services. The treatment records show recommendations to pursue counseling. Tr. 304, 310, 335. Additionally, treatment records also show that providers directed Plaintiff to contact his insurance to find out which psychiatrists and physical therapists were under contract with his insurance provider, *see, e.g.*, Tr. 335, 367, and there is no

indication in the record that he complied.  These treatment records indicate Plaintiff did have some access to treatment, but did not pursue it consistently.  The ALJ reasonably determined that the minimal treatment Plaintiff sought during the eight-year relevant period was inconsistent with claims of a disabling psychological condition.  This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptoms complaints.

### 4. *Stopped Work for Reasons Unrelated to Impairments*

The ALJ noted that Plaintiff discontinued working for reasons that were unrelated to his impairments, which undermined his claims of disabling conditions. Tr. 31.  When considering a claimant's contention that he cannot work because of his impairments, it is appropriate to consider whether the claimant has not worked for reasons unrelated to his alleged disability.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (sufficient reasons for disregarding subjective testimony include stopping work for nonmedical reasons and failure to seek care for allegedly disabling condition at the time claimant stopped work).  Here, the ALJ found that Plaintiff stopped working to stay home and care for his children, which was unrelated to his impairments.  Tr. 31 (citing Tr. 56-57, 285, 310, 328).  The ALJ reasonably considered this evidence, which provided a clear and convincing reason to discount Plaintiff's symptom claims.  Furthermore, Plaintiff did not challenge this finding.

ECF No. 15 at 16-19; *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity).

### 5. *Daily Activities*

The ALJ found that Plaintiff's daily activities were not consistent with his allegations of disabling impairments. Tr. 31. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

At the hearing, Plaintiff testified that he needed help from his nephew for daily activities such as remembering appointments and taking medications. Tr. 50-52. The ALJ found this inconsistent with the fact that Plaintiff was a stay at home father taking care of his children and stepchildren and their family home for

ORDER - 18

several years.  Tr. 31 (citing e.g., Tr. 287, 361).  The ALJ noted that Plaintiff was

independent in his personal care and was able to handle house tasks, such as

laundry, vacuuming, doing dishes, and grocery shopping.  Tr. 31 (citing e.g., Tr.

329, 338).  To the extent the ALJ erred in assessing daily activities, any such error

would be harmless because the ALJ provided several other legally sufficient

reasons, discussed *supra*, to discount Plaintiff's symptom claims.  *See Carmickle*,

533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided

four reasons to discredit the claimant, two of which were invalid); *Batson v.*

*Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (affirming a

credibility finding where one of several reasons was unsupported by the record);

*Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the

record that the . . . error was inconsequential to the ultimate nondisability

determination").  Plaintiff is not entitled to remand on these grounds.

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's consideration of the medical opinions of

treating physician Charles Haigh, M.D., treating nurse Susan Bruner, examining

psychologist John Arnold, Ph.D., examining psychologist Jeanette Higgins, Psy.D.,

and examining psychiatrist Justin Garrett, D.O.  ECF No. 15 at 8-14.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-831).

ORDER - 20

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.923(d) (2013). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

### 1. Dr. Haigh

On March 27, 2015, Dr. Haigh issued a letter stating Plaintiff "is under my care and is to do walking as tolerated, lifting as tolerated, and limitations as per physical therapy." Tr. 363. On May 4, 2015, he prepared a WorkFirst Form in which he opined that due to back pain, Plaintiff was limited to working 11-20 hours per work and that Plaintiff was limited to light work. Tr. 364-66. The ALJ gave these opinions limited weight. Tr. 32-33. Here, no other provider examined

Plaintiff after his back complaints arose in the spring of 2015. Because no other provider evaluated Plaintiff after these complaints arose, and thus no other provider rendered an opinion reflective of these complaints, the Court assumes without deciding that the ALJ was required to provide clear and convincing reasons to discredit Dr. Haigh's opinion. *Bayliss,* 427 F.3d at 1216.

First, the ALJ noted that the form gave limitations for which there was no explanation. Tr. 32-33. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. Here, the ALJ accurately noted that the form provides no explanation other than a generalized reference to "low back pain." Tr. 363-65. Dr. Haigh references his chart notes dated March 6 and April 3, 2015. Tr. 364. A review of those notes indicates that on March 6, 2015, Plaintiff visited Dr. Haigh, and complained of low back pain, which had started a month prior after a fall at work. Tr. 368-70. Dr. Haigh's examination showed minimal findings: Plaintiff's gait was within normal limits, he was able to get onto the examination table, had negative straight leg raise, negative FABER bilaterally, deep tendon reflexes were normal, and his

lower extremity sensation was normal.  Tr. 369.  Plaintiff was advised that he needed physical therapy and Dr. Haigh noted that PT "has not really been addressed yet."  Tr. 369.  Plaintiff was prescribed muscle relaxants and anti-inflammatory medication, and Dr. Haigh found there was no need for narcotics.  Tr. 369-70.  Plaintiff returned on April 3, 2015, with the same symptoms and complained that he could not find a physical therapist to take his insurance.  Tr. 367.  Dr. Haigh advised Plaintiff that it was his responsibility to contact his insurance company and ask who will take his insurance.  Tr. 367.  Dr. Haigh did not modify Plaintiff's medications.  Tr. 367.  Here, Dr. Haigh's treatment notes reveal that Plaintiff's examinations findings were minimal and no tests were conducted.  The ALJ reasonably concluded that the basis for Dr. Haigh's opined limitations was not supported.  This was a clear and convincing reason to discredit them.

Second, the ALJ found the opinions vague and based on Plaintiff's subjective symptom complaints.  Tr. 33.  A physician's opinion may be rejected if it based on a claimant's subjective complaints which were properly discounted.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair*, 885 F.2d at 604.  "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, [this] is no evidentiary basis for rejecting the opinion."

*Ghanim*, 763 F.3d at 1162.  As discussed *supra*, the ALJ reasonably discredited Plaintiff's symptom complaints.  Moreover, there were no tests were conducted.  Any examination findings were minimal.  In the absence of supportive objective findings, the ALJ reasonably concluded that Dr. Haigh's opinions were based on Plaintiff's self-reports.  This was a clear and convincing reason to reject the limitations.

Third, the ALJ found Dr. Haigh's opinions were insufficiently explained.  The Social Security regulations "give more weight to opinions that are explained than to those that are not."  *Holohan*, 246 F.3d at 1202.  The ALJ noted that the March 27, 2015 indicated the limitations were "as per physical therapy", Tr. 363, and the WorkFirst form indicated that Plaintiff should be evaluated by PT, Tr. 365-66, but there are no records indicating that Plaintiff attended physical therapy.  Additionally, Dr. Haigh noted the impairment was not expected to be permanent, but he failed to indicate how many months it was expected to last.  Tr. 365.  The lack of explanation for Dr. Haigh's opinion was a clear and convincing reason to discredit Dr. Haigh's assessed limitations.

Finally, this period does not meet the durational time frame required for a finding of disability.  Tr. 25; *see* 42 § U.S.C. 423(d)(1)(A) (in order to be found disabled, Plaintiff's impairments must have lasted or be expected to last for a continuous period of not less than 12 months).  Here, Plaintiff's complaint of low

back pain is mentioned in two chart notes, in March and April 2015. The opinions were issued in March and May 2015. In fact, Dr. Haigh noted the impairment was not expected to be permanent and he failed to indicate how many months it was expected to last. Tr. 365.

The ALJ did not err in rejecting Dr. Haigh's opinion.

### 2. *Ms. Bruner*

In November 2014, Ms. Bruner completed an evaluation and opined that Plaintiff was unable to follow complex instructions or concentrate for extended periods but that he would be able to work at a farm job, such as picking weeds for example. Tr. 360. She further opined that he would need work requiring no or minimal social skills and no decision making, preferably a job with full benefits to incentivize him to work rather than apply for disability. Tr. 361. She opined that he would be limited to working 11-20 hours per week and to light work. Tr. 360-61. The ALJ gave Ms. Bruner's opinion limited weight. Tr. 32. As an other source, the ALJ was required to identify germane reasons for rejecting the opinion. *Dodrill*, 12 F.3d at 918.

The ALJ noted that Ms. Bruner's opinion was internally inconsistent. Tr. 32-33. An ALJ may reject opinions that are internally inconsistent. *Nguyen*, 100 F.3d at 1464. An ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data and/or contradicted by the opinions

of other examining medical sources. *Tommasetti*, 533 F.3d at 1041. Although Ms. Bruner noted that Plaintiff did not have physical impairments, Tr. 360, and did not have any limitations on lifting and carrying, Tr. 361, she then imposed physical limitations of restrictions to light work. Tr. 361. Moreover, the Court notes that Ms. Bruner indicated that Plaintiff could do farm work or picking weeds, which would be inconsistent with the standing/walking limitations of light work. Finally, Ms. Bruner indicated Plaintiff could work only 11-20 hours, but then indicated that Plaintiff should seek a job with "full benefits to [increase] the incentive to work rather than apply for disability." Tr. 361. It is inconsistent to indicate Plaintiff can only work 11-20 hours a week and also suggest he seek a job with full benefits. These numerous internal inconsistencies were a germane reason to discount her opinions.

The ALJ also discounted Ms. Bruner's opinions because they were not supported. Tr. 32-33. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. Here, the ALJ noted that Ms. Bruner failed to provide any reason why Plaintiff would be limited to working a certain number of hours or limited to light work. Tr. 32-33. The ALJ further observed that Ms. Bruner was providing mental health treatment to Plaintiff, so she was less qualified to give opinions as to his physical limitations. Tr. 33; *see, e.g.*, *Williams v. Colvin*, No. 2:14-cv-00213-FVS,

2015 WL 5039911, at *8 (E.D. Wash. Aug. 26, 2015) (citing *Brosnahan v. Barnhart*, 336 F.3d 671, 676 (8th Cir. 2003)) (finding physical limitations were beyond the expertise of psychologist). In light of Ms. Bruner's lack of expertise on Plaintiff's physical functioning and the lack of explanation for her opinion, the ALJ reasonably concluded that Ms. Bruner's opinions were not supported. This was a germane reason to discount her opinions.

### 3. Dr. Arnold

In July 2015, Dr. Arnold performed a psychological/psychiatric evaluation and diagnosed Plaintiff with Unspecified Bipolar Disorder, currently depressed, generalized anxiety disorder, and alcohol use disorder (moderate-severe). Tr. 349-53. Dr. Arnold assessed seven moderate limitations; marked limitations in the abilities to understand, remember, and persist in tasks by following detailed instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, adapt to changes in a routine work setting, be aware of normal hazards and take appropriate precautions, and maintain appropriate behavior in a work setting; and a severe limitation in the ability to complete a normal work day and work week without interruptions from psychologically based symptoms. Tr. 351. Dr. Arnold further opined that the current impairments were not the result of alcohol or drug use within the last 60 days and would persist following 60 days of sobriety. Tr. 352.

The ALJ gave the opinion no weight. Tr. 32. Because Dr. Arnold's opinion was contradicted by Dr. Veraldi, Tr.44-50, Dr. Higgins, Tr. 337-39, and Dr. Garrett, Tr. 327-32, the ALJ was required to provide specific and legitimate reasons to reject Dr. Arnold's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ discredited Dr. Arnold's opinion because it was based on a cursory evaluation. Tr. 32. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 at 631. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. Also, individual medical opinions are preferred over check-box reports. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). An ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions. *Crane*, 76 F.3d at 253. However, if treatment notes are consistent with the opinion, a check-box form may not automatically be rejected. *See Garrison*, 759 F.3d at 1014 n.17; *see also Trevizo v. Berryhill*, 871 F.3d 664, 667 n.4 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form"). Here, the ALJ noted that Dr. Arnold performed a cursory evaluation, obtained a limited

history, and used a check box form containing minimal if any basis to support the extreme limitations.  Tr. 32.  Dr. Arnold conducted a clinical interview, mental status examination, performed limited testing, and performed no record review.  Tr. 349-50.  The ALJ reasonably concluded that Dr. Arnold's report did not sufficiently explain the extreme limitations he opined.

Instead, the ALJ credited Dr. Veraldi over Dr. Arnold, given her specialized expertise in clinical psychology, her SSA program knowledge, and her opportunity to review the entire longitudinal record and base her opinion on the objective and clinical finding*s*.  Tr. 31.  Moreover, the ALJ noted that she specifically testified to Plaintiff's substance abuse issues.  Tr. 25.  It is the ALJ's responsibility to resolve conflicts in the medical evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed.  *Rollins*, 261 F.3d at 857.  The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  *Ryan*, 528 F.3d at 1198 (internal quotation marks omitted).  Here, the ALJ reasonably concluded, based on this record, that Dr. Arnold's opinion lacked thoroughness and was insufficiently explained.

Second, the ALJ discounted Dr. Arnold's opinion, concluding that it was based on inaccurate information related to Plaintiff's substance abuse.  Tr. 32.  An

ALJ may properly reject a medical opinion that is rendered without knowledge of a claimant's substance abuse. *See Coffman v. Astrue*, 469 F. App'x 609, 611 (9th Cir. 2012); *Serpa v. Colvin*, No. 11-cv-121-RHW, 2013 WL 4480016, at *8 (E.D. Wash., Aug. 19, 2013). Here, the ALJ noted that Plaintiff failed to disclose marijuana or other illegal drug use to Dr. Arnold. Tr. 32 (referring to Tr. 349: "Cannabis: last use: never" and "Illegal Drugs: Never"). In fact, as the ALJ noted, Plaintiff has a substantial history of substance use. *See, e.g*, Tr. 341 (Sept. 2014: "cannabis use – 1 bowl a day"); Tr. 329 (Jan. 2013: reported he started using marijuana at age 12 and was smoking daily from age 13 to approximately 2010, and reported using methamphetamine from age 18 for approximately 12 years, 7 to 10 days a month); Tr. 285 (May 2008: reported that he began using marijuana at age 17 and used it daily from at least 2003 to interview in 2008). A claimant's history of and current substance use is particularly relevant in a matter such as this where the ALJ is required to assess a claimant's functioning with and without substance abuse. 20 C.F.R. §§ 404.1535(b), 416.935(b). This was a specific and legitimate reason to reject Dr. Arnold's opinions.

Third, the ALJ found that Dr. Arnold's limitations were based on Plaintiff's inaccurate self reports. Tr. 32. A physician's opinion may be rejected if it based on a claimant's subjective complaints which were properly discounted. *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 604.

ORDER - 30

"[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, [this] is no evidentiary basis for rejecting the opinion." *Ghanim*, 763 F.3d at 1162. As discussed *supra*, the ALJ reasonably discredited Plaintiff's symptom complaints. Moreover, here, the ALJ identified specific inconsistent information Plaintiff relayed to Dr. Arnold in the course of the evaluation. Tr. 32. For example, the ALJ noted that Plaintiff told Dr. Arnold he had been in treatment at Frontier Behavioral Health the year prior, Tr. 349, which was inconsistent with his hearing testimony that he did not receive counseling, Tr. 60-61, and was otherwise not supported by the record. The ALJ noted that Plaintiff told Dr. Arnold that he had never used cannabis, Tr. 349, but the record is replete with references to marijuana use, including use of one bowl a day as of September 2014, Tr. 341. Given the limited evaluation, limited testing, and no record review, the ALJ reasonably concluded that Dr. Arnold relied on Plaintiff's discredited symptom complaints in assessing limitations. This was a specific and legitimate reason for discounting Dr. Arnold's opinions.

Fourth, the ALJ discredited Dr. Arnold's opinion because the severity of the assessed limitations was inconsistent with many of his normal examination findings. Tr. 32. A medical opinion may be rejected if it is unsupported by medical findings and treatment notes. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tommasetti*, 533 F.3d at 1041; *Matney v. Sullivan*,

981 F.2d 1016, 1019 (9th Cir. 1992). Here, Plaintiff's Rey test was normal, Trails A were within normal limits, and Trails B test showed impairment. Tr. 350. Plaintiff's appearance, speech, and attitude were generally normal, his mood was depressed and anxious and his affect was mildly blunted, possibly due to his medications. Tr. 352. His thought process and content, orientation, perception, and insight and judgment were within normal limits. Tr. 353. His memory, fund of knowledge, concentration, and abstract thought were not within normal limits. Tr. 353. The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan*, 528 F.3d at 1198 (internal quotation marks omitted). Here, the ALJ reasonably concluded that Dr. Arnold's findings did not support the level of impairment he opined. Tr. 32. Moreover, even if the ALJ erred by discounting Dr. Arnold's opinion on this ground, any error would be harmless because, as discussed *supra*, the ALJ provided several specific and legitimate reasons supported by substantial evidence for rejecting his opinions. *See Molina,* 674 F.3d at 1115.

### 4. *Dr. Higgins and Dr. Garrett*

In April 2014, Dr. Higgins performed a consultative examination, diagnosed Plaintiff with mood disorder NOS and alcohol dependence in early full remission by self-report. Tr. 337-39. Dr. Higgins opined that Plaintiff has the ability to

understand, remember, and carry out simple instructions and to make simple work-related decisions based on behavioral observations and MSE performance; he likely has the ability to understand, remember, and carry out complex instructions and to make judgments on complex work-related decisions under low pressure situations given additional time and support; however, he cannot be expected to perform these tasks under any conditions while severely depressed and/or actively using alcohol. Tr. 339. She further opined that Plaintiff has the ability to interact appropriately with the public given his presentation; however, he does appear to become quite anxious when under perceived pressure. He is likely to tolerate brief, casual, low-pressure, minimal contact with the public. Tr. 339. He has the ability to appropriately interact with a supervisor and coworkers who are patient, tolerant, and supportive. He does not currently have the ability to respond appropriately to the usual work situations and to changes in a routine work setting due to mood dysregulation and decompensation under perceived pressure (i.e., drinking behavior, verbal aggression). Tr. 339. Significantly, she noted that "[a]lcohol use is certainly exacerbating depression and prognosis is poor for this reason. If he were to abstain from alcohol for a minimum of six months without relapse and access outpatient therapy to address depression, prognosis would improve significantly." Tr. 339.

In January of 2013, Dr. Garrett evaluated Plaintiff and diagnosed him with bipolar disorder type II, current episode depressed, generalized anxiety disorder, alcohol dependence ongoing, and methamphetamine dependence in full-sustained remission. Tr. 327-31. Dr. Garrett opined Plaintiff had significant impairments, including being markedly impaired ability to perform simply and repetitive tasks based on his difficulty with immediate memory, concentration, and serial subtractions, and distractibility; severely impaired ability to perform detailed and complex tasks; and markedly impaired ability to perform work activities on a consistent basis without special or additional instruction based on his difficulty with immediate memory, concentration and distractibility. Tr. 331. Dr. Garrett stated "his heavy alcohol use is a confounding factor, and it is possible that his mood and anxiety symptoms are substance induced." Tr. 331.

Plaintiff contends that the ALJ discussed these opinions, but did not expressly reject any part of them. ECF No. 15 at 13-14 (citing Tr. 27). First, the ALJ considered the opinions in the context of the substance use analysis as required by the social security regulations. Tr. 24-27; 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2); SSR 13-2p. Here, the ALJ evaluated Plaintiff's disability considering his drug and alcohol use. Relying in part on the opinions of Dr. Veraldi, Dr. Higgins, and Dr. Garrett, all of whom noted limitations related to Plaintiff's substance abuse, the ALJ concluded Plaintiff would be disabled

considering his substance abuse. Tr. 27. Although an ALJ must provide specific and legitimate reasons to reject contradicted medical opinion evidence, the same standard does not apply when the ALJ credits opinion evidence. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); *Bayliss*, 427 F.3d at 1216. It is apparent from the context of the ALJ's finding that the ALJ was giving credit to both Dr. Higgins' and Dr. Garretts' opinions. Next, the ALJ then re-evaluated Plaintiff's disability, considering Plaintiff's impairments once the effects of drug and alcohol abuse had been eliminated. Tr. 28. At that point, the ALJ did not consider Dr. Higgins' and Dr. Garrett's opinions as they were given at a time when Plaintiff was heavily abusing alcohol and neither opined limitations that would exist absent drug and alcohol abuse.

Here, both Dr. Higgins and Dr. Garrett found that Plaintiff's conditions were significantly impacted by his alcohol abuse. Tr. 339, 331. Plaintiff has not identified any limitation that Dr. Higgins or Dr. Garrett opined would exist absent Plaintiff's substance abuse. As a result, the ALJ was not required to incorporate any opined limitation from Dr. Higgins' or Dr. Garrett's opinions into the RFC. Plaintiff has not identified any error in the evaluation of Dr. Higgins' and Dr. Garrett's opinions.

**C. Step Two**

Plaintiff contends the ALJ erred at step two by failing to identify the following impairments as severe at step two: bipolar/mood disorder, diabetes, muscle spasms, ADHD, borderline intellectual functioning/cognitive impairment/learning disability, with limited ability to read, write/spell, and do math, GERD, insomnia, and low back pain. ECF No. 15 at 15-16.

At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908 (1991).[1] An impairment is medically determinable if it is diagnosed by an acceptable medical source and based upon acceptable medical evidence. SSR 96–4p, available at 1996 WL 374187; 20 C.F.R. §§ 404.1513(a), 416.913(a) (2013).

_____

[1] As of March 27, 2017, relevant regulations including 20 C.F.R. § 416.908 was removed and reserved, and 20 C.F.R. §§ 416.921, 416.922 were revised. The Court applies the version that was in effect at the time of the ALJ's decision.

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, dealing with changes in a routine work setting, and responding appropriately to supervision, coworkers, and usual work situations. 20 C.F.R. §§ 404.1521(a), 416.921(a) (1985);[2] SSR 85-28.

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

---

[2] As of March 27, 2017, this regulation was amended. The Court applies the version in effect at the time of the ALJ's decision.

ORDER - 37

At step two, the ALJ considered the record concerning the challenged impairments, but concluded these conditions were non-severe as they did not more than minimally impact Plaintiff's ability to perform basic work activities or were not medically determinable. Tr. 26.

### 1. Bipolar/Mood Disorder

The ALJ concluded that the record did not support that bipolar disorder was a medically determinable impairment. Tr. 26. Specifically, relying on the testimony of the medical expert Dr. Veraldi, Tr. 45-47, the ALJ concluded that the DSM-IV and V[3] criteria for diagnosing bipolar disorder were not present in the record. *Id.* First, the ALJ noted that bipolar disorder was mentioned in the record several times, but concluded that in most instances the evaluator was adopting Plaintiff's recitation that he suffers from the disorder. *Id.* (citing Tr. 270, 327, 343, 350). Second, the ALJ stated that the DSM-IV and V require documentation of episodes of mania in order to make such a diagnosis. Tr. 26. The ALJ noted that the only possible mention of hypomania in the record occurred in 2012 at a time when Plaintiff admitted to drinking up to 24 beers a day. Tr. 26 (citing Tr. 328). The ALJ then further noted that the DSM-IV and V indicate that substance abuse

---

[3] Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* (5th ed. 2013).

ORDER - 38

can confound the diagnosis of bipolar disorder and that the diagnosis must be made in the absence of substance abuse. Tr. 26. The ALJ concluded, again relying on Dr. Veraldi's testimony, that Plaintiff's mental health impairments were more accurately characterized by a depression diagnosis, which the ALJ found to be a severe impairment at step two. Tr. 26-28 (referring to Tr. 45-47). Plaintiff fails to address any of the ALJ's specific findings, instead citing to records indicating Plaintiff's diagnosis of bipolar disorder. ECF No. 15 at 15-16; ECF No. 17 at 5. Here, Plaintiff has not established that the ALJ erred in concluding that Plaintiff's mental health impairments were more appropriately characterized as depressive disorder rather than bipolar disorder.

Moreover, as Plaintiff was found to have a mental health severe impairment, this claim was not resolved at step two. If there was any error in the ALJ's finding at step two, it is harmless as all impairments, both severe and non-severe, were considered in the determination of Plaintiff's residual functional capacity. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *see also Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error at step two is harmless where the step is resolved in claimant's favor). Plaintiff makes no showing that bipolar disorder creates credited limitations not already accounted for in the RFC. *See Shinseki*, 556 U.S. at 409-10 (the party challenging the ALJ's decision bears the burden of showing harm).

## 2. Borderline Intellectual Functioning

The ALJ concluded that the record did not support that borderline intellectual functioning was a medically determinable impairment. Tr. 26. The ALJ noted that a rule out for border intellectual functioning was mentioned during an evaluation, Tr. 330, and that Ms. Brunner noted that "IQ testing would likely reveal below average range, estimate 80," Tr. 360. First, "[a] 'rule-out' diagnosis is by no means a diagnosis. In the medical context, a 'rule-out' diagnosis means there is evidence for a diagnosis *may* be met, but more information is needed in order to rule it out." *Carrasco v. Astrue*, No. ED CV 10-0043 JCG, 2011 WL 499346, at *4 (C.D. Cal. Feb. 8, 2011) (emphasis in original) (internal citations omitted). A "rule out" diagnosis, standing alone, is not sufficient to establish the existence of a severe impairment. *See, e.g.*, *Crawford v. Colvin*, No. C13-1786-JCC, 2014 WL 2216115, at *5 (W.D. Wash. May 29, 2014); *Jackson v. Astrue*, No. ED CV 09-677-PJW, 2010 WL 1734912, at *2 (C.D. Cal. Apr. 28, 2010); *Simpson v. Comm'r, Soc. Sec. Admin.*, No. Civ. 99-1816-JO, 2001 WL 213762, at *8 (D. Or. Feb. 8, 2001). As the ALJ noted no testing has been done to support a low Q. Tr. 26. Moreover, Ms. Brunner is not an acceptable medical source, thus, her notation that his IQ would likely be below average, cannot support a medically determinable impairment. *Nguyen*, 100 F.3d at 1467 (non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical

evidence).  As Dr. Veraldi noted, estimating IQs should be avoided and there is no

information on which to base such an assessment in the record.  Tr. 46.  Plaintiff

has offered no argument to counter these findings, thus Plaintiff has not

demonstrated error.

   *3.  ADHD*

   The ALJ concluded that the record did not support that ADHD was a

medically determinable impairment.  Tr. 26.  In support of her finding, the ALJ

noted that ADHD was mentioned only in the 2007-2008 treatment records of

Nurse Practitioner John Billings, who is not an acceptable medical source, without

any evidence of testing to support the diagnosis.  Tr. 26 (citing Tr. 275-83).

Moreover, Dr. Veraldi, the medical expert testified that the diagnosis was not

substantiated in the record.  Tr. 45.  Plaintiff offers no argument other than a

citation to Mr. Billings' notes indicating the diagnosis of ADHD.  ECF No. 15 at

15.[4]  Since an impairment must be diagnosed by an acceptable medical source and

must be supported by medical evidence in the record, Plaintiff has not

demonstrated that the ALJ erred in concluding that the record did not establish

ADHD was a medically determinable impairment.  *Nguyen*, 100 F.3d at 1467.

_____

[4] The Court notes that in May 2008 when Plaintiff was asked about ADHD, he

indicated he was not aware of ever being diagnosed with ADHD.  Tr. 284.

ORDER - 41

Moreover, Plaintiff has further not identified any evidence indicating that ADHD caused any limitations in Plaintiff's basis work abilities.

### 4. Diabetes

The ALJ did not address whether diabetes was a medically determinable impairment. Tr. 23-26. At the June 2016 hearing, Plaintiff testified at the he was diagnosed with type 2 diabetes the year prior to the hearing. Tr. 53. There was no testimony regarding how it impacted his basic work abilities. Plaintiff failed to identify any medical records nor did the Court locate any records indicating Plaintiff was diagnosed with diabetes by an acceptable medical source or that diabetes had any impact on his basic work abilities. ECF No. 15 at 15. The ALJ did not err in failing to find diabetes to be a medically determinable impairment.

### 5. GERD

The ALJ did not address whether GERD was a medically determinable impairment. Tr. 23-26. In support of his contention that Plaintiff's GERD is a severe impairment, Plaintiff cites to a January 2012 treatment record indicating Plaintiff was burping a lot after eating spicy foods. Tr. 309. Dr. Haigh prescribed Prilosec. Tr. 311. Plaintiff points to no evidence in the record that GERD has any impact on his basic work abilities. ECF No. 15 at 15. The ALJ did not err in failing to find GERD to be a medically determinable impairment.

*6. Low-Back Pain*

The ALJ did not address whether low-back pain was a medically determinable impairment. Tr. 23-26. As discussed *supra*, Plaintiff failed to establish that any impairment related to his low-back pain met the durational requirement. Accordingly, Plaintiff has not established any error for failing to find low-back pain a severe impairment.

Plaintiff has not established any error in the ALJ's step two findings. Moreover, as discussed above because Plaintiff was found to have severe impairments, this case was not resolved at step two. If there was any error in the ALJ's finding at step two, it is harmless as all impairments, both severe and non-severe, were considered in the determination of Plaintiff's residual functional capacity. *Lewis*, 498 F.3d at 911. Plaintiff has made no showing that any of the conditions mentioned create limitations not already accounted for in the RFC. *See Shinseki*, 556 U.S. at 409-10 (the party challenging the ALJ's decision bears the burden of showing harm). There was no error in the step two analysis.

**D. Step Three**

Plaintiff contends that the ALJ erred by finding that he did not met Listing 12.04 and 12.06 if he were to discontinue substance abuse at Step Three. ECF No. 15 at 16.

At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2012). The Listing of Impairments "describes for each of the major body systems impairments [which are considered] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. §§ 404.1525, 416.925 (2011). To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to his claim. 20 C.F.R. §§ 404.1525(d), 416.925(d) (2011). If a claimant meets the listed criteria for disability, he will be found to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2012). The claimant bears the burden of establishing he meets a listing. *Burch*, 400 F.3d at 683.

Here, Plaintiff relies entirely on the argument that the ALJ erred in evaluating the medical evidence related to what impairments and limitations would exist if he stopped substance abuse. ECF No. 15 at 16. Given that the Court has found no error in the ALJ's evaluation of the medical evidence, Plaintiff has not

established that the ALJ erred in determining that Plaintiff did not meet a Listing at Step Three.

**E. Steps Four and Five**

Plaintiff contends the ALJ's erred at steps four and five because the ALJ relied upon an RFC and hypothetical that failed to incorporate all of Plaintiff's limitations. ECF No. 15 at 19-20. However, the ALJ's RFC need only include those limitations found credible and supported by substantial evidence. *Bayliss*, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record."). The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all of the limitations and restrictions of the particular claimant. *Bray*, 554 F.3d at 1228. "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id*. However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). A claimant fails to establish that a step five determination is flawed by simply restating argument that the ALJ improperly discounted certain

evidence, when the record demonstrates the evidence was properly rejected. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence and Plaintiff's symptom claims. *See Stubbs-Danielson*, 539 F.3d at 1175 (challenge to ALJ's step five findings was unavailing where it "simply restates [claimant's] argument that the ALJ's RFC finding did not account for all her limitations"). For reasons discussed throughout this decision, the ALJ's adverse finding regarding Plaintiff's subjective symptom claims and consideration of the medical opinion evidence are legally sufficient and supported by substantial evidence. Thus, the ALJ did not err in assessing the RFC and posed a hypothetical to the vocational expert that incorporated all of the limitations in the ALJ's detailed RFC determination, to which the expert responded that Plaintiff could perform past relevant work. The ALJ properly relied upon this testimony to support the step four and step five determinations. Therefore, the ALJ's determination that Plaintiff was not disabled within the meaning of the Social Security Act was proper and supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

ORDER - 46

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 16, is **GRANTED**.

3. The Court enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED February 15, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 47